**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

IN RE:                                        :

                                              :

**BRANDT CADET GRAY**                         :

**CARMEN TORRES MONTANEZ**                    :        **Case No. 07-07380-ESL**

                                              :        **Chapter 13**

      **Debtor(s)**                           :

                                              :

_____              :

**OPINION AND ORDER**

This case is before the court upon the request filed by Brandt Cadet Gray and Carmen Milagros Torres Montañez ("Debtors") to confirm the amended chapter 13 plan dated June 7, 2008 (the "amended plan") (Dkt. 40).[1] The amended plan modifies the rights of secured creditor, Doral Bank, Inc. ("Doral"), pursuant to 11 U.S.C. § 1322(b)(2). For the reasons set forth below, confirmation of Debtor's amended plan dated June 7, 2008 is hereby denied.

***Background***

On December 17, 2007, the Debtors filed a chapter 13 petition. Doral holds an allowed claim secured by the Debtors' principal residence. Debtors' initial amended chapter 13 plan dated January 24, 2008 (Dkt. 18) modified Doral's secured claim pursuant to 11 U.S.C. § 1322(b)(2). The plan was objected by Doral (Dkt. 20), and a hearing on confirmation was held on February 27, 2008. (Dkt. 25). The Debtors and Doral were ordered to file legal briefs on the applicability of sections 1322(b)(2) and 1322(c) to this case. The same were filed on March 24, 2008 (Doral) (Dkt. 31), and May 12, 2008 (Debtors) (Dkt. 39). Both parties argued almost exclusively section 1322(b)(2) "lien stripping" and did not address the effects of section 1325(a)(5) over the amended plan, as expressly

_____

[1] Matters of record shall be referred to as "Dkt. __".

required by section 1322(c)(2). Thereafter, on June 7, 2008, Debtors filed the current amended plan. (Dkt. 40). The amended plan also modifies Doral's claim pursuant to 11 U.S.C. § 1322(b)(2), but with differing repayment terms and interest rates. In view of the intervening filing of the amended plan, on July 14, 2008, the court ordered the parties to brief whether the arguments in favor and against confirmation of the docket 18 plan applied to the amended plan, and ordered Doral to state its position regarding the same. On August 28, 2008, the Debtors responded affirming their arguments in support of confirmation. (Dkt. 42).

**Doral's Lien**

On June 12, 1997, the Debtors executed a Mortgage Note payable to Doral Mortgage Corporation ("Doral") in the principal amount of $77,000, accruing interest at 10.95%. The monthly payments in the amount of $730.38 commenced in July 1997 and end in June 2012, when Debtors must pay a balloon payment in the amount of $64,438.85. On June 12, 1997, the Debtors also executed a Mortgage Deed to secure Doral's loan with a property located in Urb. Castellana Garden, in Carolina, Puerto Rico. The deed is properly registered in the Property Registry. The property given as collateral to secure Doral's claim is the Debtors' principal residence.

**The Chapter 13 Plan**

1. The amended chapter 13 plan dated June 7, 2008 (Dkt. 40) increases the base to $60,850 through stepped up payments for a period of 60 months. Doral's mortgage will be paid as follows:

a. The principal amount of $73,214.96 will be paid directly by Debtors through monthly payments in the amount of $763, with an annual interest rate of 6%.[2] Payments will be

---

[2] The parties are charged with the responsibility of establishing through expert witnesses, the applicable interest rate. It is not the role of the court to be an economist or a banker or a financial advisor.

-2-

applied to principal first, and interest will accumulate.

b. The plan discloses the accumulated balance of principal ($27,434.96) and interest ($15,211.94) at the end of month 60. The outstanding balance after month 60 is $42,646.90 to be paid directly by Debtors in a lump sum payment by refinancing the property.

c. The arrears as per the proof of claim will be paid on a pro-rata basis through the plan payments.

2. Since the balloon payment under the terms of Doral's Mortgage Note is due in June 2012, the same is due before the date on which the final payment under the either plan is due.

*Issue*

The issue in this case is if the interaction of sections 1322(b)(2), 1322(b)(5), 1322(c)(2), 1322(e) and 1325(a)(5) of the Bankruptcy Code allows the Debtors to modify the rights of Doral as proposed in the chapter 13 plan. Section 1322(b)(2) provides that a chapter 13 plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, subject to the exceptions in sections 1322(c) and 1322(e). Sections 1322(c)(2) and 1322(e) incorporate section 1325(a)(5). Thus, the court must determine if debtors can modify the terms of the mortgage pursuant to section 1325(a)(5)(B), and provide for a final balloon payment.

*Discussion*

Section 1322(b)(2) prohibits modification of claims secured by a debtor's principal residence. However, section 1322(c)(2) creates an exception to modification if such claim becomes due (fully payable) before the date on which the final payment under the plan is due. It is undisputed that Doral's claim comes due before the final payment proposed in the amended plan and is therefore covered by the section 1322(c)(2) exception to modification. This section in turn incorporates the

- 3 -

provisions of section 1325(a)(5) to provide for payment of the claim "as modified.".*See In re Ibarra*, 235 B.R. 204, 209-11 (Bkrtcy.D.P.R. 1999) (holding that a debtor can cure defaults and modify an allowed claim secured by a debtor's principal under the provisions of section 1322(c)(1), (2), only if the debtor meets the requirements of section 1325(a)(5)). The Debtors' correctly argue that modification is permissible under 1322(c). However, the amended plan provides for a final balloon payment of over $42,000 in unpaid interests and principal that will accrue during the term of the plan. Debtors propose to make the balloon payment from the proceeds of a future mortgage "refinancing".

Section 1322(c)(2), by incorporating section 1325(a)(5), allows debtors to modify claims secured by a debtor's principal residence, if the last payment on the claim is due before the last payment is due under the plan. *See*, 8 Collier on Bankruptcy ¶ 1322.16, at 1322-61 (15th ed. rev. 2007), citing *In re Paschen*, 296 F.3d 1203 (11th Cir. 2002). Section 1325(a)(5) "provides that in the event that the debtor does not surrender the collateral to the creditor or the creditor accepts the plan, the debtor may keep the property, so long as the secured creditor retains its lien and receives payments equal to its present value." *In re Ibarra*, 235 B.R. 204, 212 (Bkrtcy.D.P.R. 1999) (citation omitted).

Since the enactment of section 1322(c) in 1994, one of the permissible modifications to secured claims is to vary the contractual rate of interest in favor of a "discount rate", which will yield a present value of the stream of plan payments that is not less than the allowed amount of the secured claim. *See discussion in Ibarra*, 235 B.R. at 209-13. The plan may also modify the claim by extending payment of a claim up to, but not beyond, the term of the plan. *Id*. at 210-11.

The amended plan dated June 7, 2008 proposes to modify Doral's allowed claim by applying payments made under the plan to the principal first, leaving the interest payments to accrue until the

- 4 -

final month of the plan and by changing the interest on the principal from the contractual 10.95%, to a modified 6%. The issue is whether such modifications are permissible under sections 1322(c) and 1325(a)(5).

As we held in *Ibarra*, interest rates on allowed secured claims can be modified. We also held that the applicable interest rate for present valuation purposes is the market rate (or the coerced loan approach), coupled with the rebuttable presumption that the contract rate is the proper interest rate in a Chapter 13 case. 235 B.R. at 215. We established that debtors should proffer evidence of the market rate, which could be rebutted by the creditors or parties in interest. *Id.* In this case, the Debtors propose to modify the interest rate to 6% in the amended plan (Dkt. 40), purportedly applying the "prime plus" formula articulated by four Justices of the Supreme Court writing for the divided plurality in the case of *Till v. SCS Credit Corp.*, 541 U.S. 465, 478-81 (2004). (Dkt. 39 at 7-8). The plurality in *Till* adopted the national prime rate as the applicable discount factor to perform the present value calculation of a stream of payments under a plan, as required by section 1325(a)(5)(B)(ii). The "prime plus" formula approach advocated by four Justices in *Till* requires the assessment of a "risk factor" to be added to the prime rate. *Id.* at 479. *Till* left the assessment of the risk factor to the individual courts and placed the burden on creditors to proffer evidence of the proper discount factor. *Id.*

The Debtors claim to have added a 1% risk factor to the prime rate, but do not disclose the effective date of the prime rate applied, nor the assessment used to conclude that a 1% risk factor is the proper risk premium applicable to Doral's claim. Doral opposes any modification, basically arguing that section 1322(c) only applies in the context of bifurcating secured claims; and because the "Debtors have not provided any legal basis for reducing the stated interest rate [on the mortgage] and allocating payments to principal." (Dkt. 31 at 5). Doral has not submitted any evidence of the

- 5 -

applicable discount factor to its claim. Thus, we take no position regarding the applicable interest rate as the parties have not provided proper evidence of the applicable discount factor in this case. The court has not been placed in a position to make a final determination on the issue of the applicable discount factor to Doral's claim and, for this reason alone, we cannot confirm the Debtors' plan.

The Debtors also propose to pay principal first, leaving interest to accrue and proposing to pay it in a lump sum at the end of the plan. The Debtors' plan must fully compensate a non-consenting secured creditor for the present value of his property interest, and place the creditor in the same position as if the collateral were liquidated. *Pringle, supra; Ibarra, supra* at 213. To do so, "a Chapter 13 plan must provide for periodic payments of the principal amount of the allowed claim and adequate interest to yield present value as of the effective date of the plan." *Pringle, supra.*, citing *In re Scott*, 248 B.R. 786, 789 (Bkrtcy.N.D.Ill. 2000); *General Motors Acceptance Corp. v. Jones*, 999 F.2d 63, 67 (3d Cir. 1993). "To determine whether the plan grants this present value through the proposed interest on the deferred payment, a debtor must show that, in addition to deferred principal payments aggregating the face amount of the allowed secured claim, a Chapter 13 plan proposes to pay interest on the face amount of the allowed secured claim at an appropriate discount rate over the course of the payment extension period." *Ibarra* at 213 (citation and internal quotations omitted). The Debtors' are bound to pay principal *and* interest concurrently during the term of the plan. As such, the Debtors' proposal to partially pay principal first while accruing, but not paying, interest until the end of the plan fails to meet the requirement that a non-consenting secured creditor must be paid the present value of its claim.

A debtor can cure defaults and modify an allowed claim secured by a debtor's principal residence under the provisions of section 1322(c), only if the debtor's plan meets the requirements

of section 1325(a)(5)). *Ibarra*, 235 B.R. at 211; *see also In re Paschen*, 2000 WL 33743100 (Bkrtcy.M.D.Ga. 2000) (unreported opinion) (section 1322(c)(2) permits modification and cram down under section 1325(a)(5) of home mortgage claim that is due during the term of the plan) (citation omitted). Given the facts of this case, the Debtors' correctly argue that modification is permissible under 1322(c). However as stated in our Order of July 14, 2008, it is the responsibility of the parties to supply the court with expert evidence of the applicable interest to Doral's claim. (Dkt. 41 at 3, n. 3). They have not. Furthermore, the Debtors must pay Doral principal and interest payments the present value of which is not less than the allowed amount of Doral's claim. The amended plan also fails in that regard.

Additionally, the proposed balloon payment in the Debtors' amended plan violates the section 1325(a)(5)(B)(iii)(I) requirement that distributions to Doral be in "equal monthly amounts", and cannot be confirmed. *In re Melillo*, 385 B.R. 476 (Bkrtcy.D.Mass. 2008) (denying confirmation of plan proposing stepped up and final balloon payment as being in violation of the "equal monthly amounts" requirement of section 1325(a)(5)(B)(iii)(I)). *In re Correale-Darling*, 2008 WL 4057141 (Bkrtcy. D. Mass. 2008).[3] The plain statutory language and the applicable case law makes clear that distributions to Doral must be in equal monthly amounts precisely because "graduated [monthly] payments and backloaded balloon payments in plans are exactly the proposed treatment Congress sought to prohibit." *Id.* at p. 5 n. 27 (collecting and citing cases construing the "equal monthly amounts" language in section 1325(a)(5)).

Bankruptcy courts faced with plans such as Debtors' providing for final balloon payments

---

[3] This court declines to adopt, at this time, that the confirmation may be denied even if the secured creditor or a party in interest after due notice do not object a chapter 13 plan providing for a balloon payment instead of equal monthly payments. There may be sound business and financial reasons for a secured creditor or a party in interest not to object such a treatment.

- 7 -

to satisfy secured claims have held against confirmation because such plans violate section 1325(a)(5)(B)(iii)(I). *See, e.g., Melillo, supra* (rejecting plan providing for final balloon payment to secured mortgage creditor); *In re Lemieux*, 347 B.R. 460 (Bkrtcy.D.Mass. 2006); *In re Newberry*, 2007 WL 2029312 (Bkrtcy.D.Vt. 2007); *See also, In re Wagner*, 342 B.R. 766, 772 (Bkrtcy.E.D.Tenn. 2006) (rejecting plan proposing balloon payment and holding that discharge of mortgage debt in a prior chapter 7 case creates a lien the value of which must be paid in full through a subsequent chapter 13 plan through equal monthly payments) (citations omitted). Consequently, the Debtor's new plan cannot be confirmed.[4]

**Conclusion:**

An allowed claim secured by the Debtors' principal residence can be modified pursuant to sections 1322(c) and 1325(a)(5)(B). However, the Debtors must satisfy Doral's secured claim by proposing a plan that pays the present value of the claim. In order to satisfy the requirements of section 1325(a)(5)(B)(ii), plan payments must simultaneously include principal and interest. Debtors' amended chapter 13 plan fails to establish the proper discount rate to pay the present value of the secured claim and fails to simultaneously pay principal and interest.

A plain reading of § 1325(a)(5)(B)(iii)(I) requires the Debtors to satisfy Doral's claim by providing for distributions under the plan in "equal monthly amounts." The inclusion of a final balloon payment to Doral in the amended plan is contrary to the requirement of equal monthly payments.

In view of the foregoing, confirmation of the amended chapter 13 plan dated June 7, 2008 (Dkt. #40) is hereby denied.

---

[4] The fact that Debtor proposes to raise the balloon payment from "refinancing" at the end of the plan raises feasibility issues which may also preclude confirmation under 1325(a)(6). *Wagner, supra.*

- 8 -

SO ORDERED.

San Juan, Puerto Rico, this 24th day of November, 2008.

_____
ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge